# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

CRIMINAL CASE NO.

1:11-cr-00546-AT-RGV

DAVID S. DENTON

## MAGISTRATE JUDGE'S FINAL REPORT, RECOMMENDATION, AND ORDER

Defendant David S. Denton ("Denton") is charged in an indictment with knowingly possessing computer files containing visual depictions of minors engaged in sexually explicit conduct, the depictions of which had been shipped and transported in interstate and foreign commerce and produced using minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B). [Doc. 1].[1] Pending before the Court is Denton's motion to suppress evidence, [Doc. 11],[2] which was scheduled for an evidentiary hearing on February 15, 2012, [Doc. 12]. However, Denton waived an evidentiary hearing, see [Docket entry dated 02/15/2012], and

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

[2] Denton also filed a motion to suppress statements, [Doc. 10], which he withdrew on January 19, 2012, [Doc. 13].

on March 13, 2012, the parties filed a joint stipulation, [Doc. 16], in which they stipulated as to the testimony of Georgia State Probation Officer Brian Gilbreath ("Officer Gilbreath"), in connection with the pending motion to suppress.[3]   On March 30, 2012, Denton filed a brief in support of his motion to suppress, [Doc. 21], to which the government filed a response in opposition on April 20, 2012, [Doc. 25]. On May 17, 2012, Denton filed his reply brief in support of his suppression motion. [Doc. 30].  For the following reasons, it is **RECOMMENDED** that Denton's motion to suppress, [Doc. 11], be **DENIED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

On April 18, 2008, Denton entered guilty pleas in two separate criminal cases in the Superior Court for Gwinnett County, Georgia.   See [Doc. 20 at 55-77].

---

[3] The conduct underlying the instant federal indictment was initially the subject of criminal charges filed in the Superior Court for Gwinnett County, Georgia, see Case No. 11-B-1931-10; [Doc. 25-3], and an evidentiary hearing was held in that case on June 10, 2011, on a nearly identical motion to suppress filed by Denton, and the court heard testimony from one witness, Officer Gilbreath, see [Doc. 20 at 1-54; Doc. 25-4 at 2-47].  However, while the motion to suppress was still pending in the Superior Court, a grand jury in the Northern District of Georgia returned the instant federal indictment, [Doc. 1], and the parties have agreed to argue the present motion to suppress from the evidentiary record presented in the Superior Court and based on the March 13, 2012, joint stipulation, see [Docket entry dated 02/15/2012; Doc. 16].  The parties have filed the transcript of the June 10, 2011, evidentiary hearing, and the citations to the document and page numbers of the transcript in this Report and Recommendation refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.  See [Doc. 20 at 1-54; Doc. 25-4 at 2-47].

Specifically, Denton pled guilty to eight counts of sale, reproduction, manufacture and/or distribution of unauthorized commercial films on DVDs in criminal case number 06-B-5329-10 and five counts of possession of images depicting child pornography in criminal case number 08-B-0922-10. [Id. at 50-77]. On October 30, 2008, the Honorable Warren O. Davis, Gwinnett County Superior Court Judge ("Judge Davis"), sentenced Denton to, among other things, 18 months of imprisonment to run concurrent in both criminal cases as well as a term of probation in the latter criminal case. [Id. at 78-99]. After Denton completed his term of imprisonment, he met with his probation officer, Officer Gilbreath, on November 12, 2009, and began his term of probation. [Id. at 12-15; Doc. 25-6 at 2-4; Doc. 25-7 at 2].

On November 22, 2010, while Denton still remained on probation, Officer Gilbreath received information that led to a search of Denton's residence, the seizure of, among other things, three computers and computer media, and the subsequent search pursuant to a search warrant of the computers and computer media, which revealed images depicting child pornography. [Doc. 20 at 18-19, 22]. On February 23, 2011, Denton was charged in an indictment in the Superior Court of Gwinnett County, Georgia, with nine counts of sexual exploitation of children in violation of O.C.G.A. § 16-12-100. [Doc. 25-3 at 2-5]. As noted earlier, Denton filed a motion to

suppress the evidence, and on June 10, 2011, Judge Davis held an evidentiary hearing on the motion to suppress. [Doc. 20 at 1-46]. After this hearing, but before Judge Davis ruled on the pending motion, a grand jury in the Northern District of Georgia returned the pending federal indictment against Denton, charging him with violation of 18 U.S.C. § 2252(a)(4)(B). [Doc. 1]. On January 9, 2012, Denton filed the pending motion to suppress evidence, [Doc. 11], which is now ready for ruling.

## A. April 18, 2008, Plea Hearing

On April 18, 2008, Denton appeared with his attorney before Judge Davis to enter a negotiated guilty plea in criminal case number 06-B-5329-10, which charged eight counts of sale, reproduction, manufacture and/or distribution of unauthorized recorded material, and criminal case number 08-B-0922-10, which charged five counts of sexual exploitation of children. [Doc. 20 at 55-77].[4] The prosecutor advised the court of the recommendation that Denton enter a guilty plea but that sentencing be withheld until after Denton had a psychological evaluation to determine his danger to the community and to minor children specifically. [Id. at 57-59, 67, 69-70]. The prosecutor also informed the court that following the psychological evaluation, the parties would return for sentencing, which would

---

[4] The state was proceeding by accusation with regard to the sexual exploitation of children counts as Denton had not been indicted on these charges, and during the April 18, 2008, plea hearing, he specifically waived his right to an indictment on these charges. [Doc. 20 at 57, 64-65].

involve an agreed-upon "capped plea of 15 years to serve, with a maximum of 5 years to be served in custody with the remainder being probated,"[5] no fine, payment for the psychological evaluation, registration as a sex offender, and a "$50 indigent defense fund application fee." [Id. at 58, 70].

The prosecutor then proceeded to detail Denton's criminal history, including the fact that he already was "a registered sex offender in the Federal court system." [Id. at 59]. Thereafter, the prosecutor laid a factual basis for each plea in the two criminal cases against Denton. [Id. at 60-63]. In particular, the prosecutor explained that on August 12, 2006, Gwinnett County police officers initiated a traffic stop of Denton's vehicle after observing that it had an expired tag. [Id. at 60]. The officers approached Denton, who was the driver and sole occupant of the vehicle, and after they ran a driver's license check, they discovered that his license had been suspended and Denton was placed under arrest. [Id.]. After Denton's arrest, the officers performed an inventory search of the vehicle prior to impound and discovered "[s]everal boxes filled with DVDs" that appeared to be "duplicates of commercial movies." [Id.]. After waiving his Miranda[6] rights, Denton admitted that

---

[5] The prosecutor explained that the negotiated component of the plea represented 15 years of supervision and that the non-negotiated component of the plea represented the length of imprisonment, which was capped at 5 years. [Doc. 20 at 69].

[6] See Miranda v. Arizona, 384 U.S. 436 (1966).

"a few of the DVDs were originals from China and others were duplicates he made and sold at conventions and shows." [Id. at 60-61].

During the course of this investigation, the officers also discovered that Denton was a registered sex offender and based on their concern that he may have been reproducing child pornography, the officers obtained a search warrant for Denton's residence. [Id. at 61]. Prior to executing the search warrant, the officers asked Denton whether there was any child pornography in his house, and Denton replied, "You will not find any child pornography in terms of reproduction. However, there is child pornography on my personal computer for personal use." [Id.]. The officers subsequently recovered child pornography on Denton's laptop computer, which included "stills" and videos apparently downloaded from the Internet. [Id. at 62-63].

After the prosecutor laid the factual foundation for the pleas, Denton was placed under oath and asked his age; his date of birth; whether he was under the influence of any drugs, medicine, or alcohol; how far he went in school; whether he could read and write in English; whether he had read and examined the accusation charging him with sexual exploitation of children and the indictment charging him with the unauthorized reproduction of commercial DVD movies; whether he fully understood the charges; whether he understood that by pleading guilty, he was

giving up certain rights, including the right to a trial by jury, the right to be presumed innocent, the right to confrontation, the right to subpoena witnesses, the right to testify, the right to assistance of counsel at trial, and the right to not incriminate himself; whether he understood that he was not required to proceed on an accusation on the child pornography charges and that he could demand to be charged by indictment; and whether he understood the possible penalties associated with the charges, all of which he answered and acknowledged that he understood. [Id. at 63-66]. The prosecutor also asked Denton whether he understood that when he returned for sentencing, he had the right to withdraw his guilty plea if the court exceeded the state's recommendation, to which Denton gave an affirmative response. [Id. at 71]. The prosecutor then set forth the general and special conditions of probation,[7] and Denton stated that he understood those conditions and that he was entering his plea freely and voluntarily and not as the result of any force, threats, or promises. [Id. at 71-73]. Denton then admitted that he had committed the offenses to which he was pleading guilty and the court found that "the plea had been freely and voluntarily entered" and that there was "an underlying factual basis for the plea in both counts." [Id. at 74-75].

_____

[7] Neither the prosecutor nor the court mentioned any Fourth Amendment waiver or search provision as a condition of probation during the April 18, 2008, plea hearing. See [Doc. 20 at 55-77].

**B.**     <u>October 30, 2008, Sentencing Hearing</u>

On October 30, 2008, Denton, with his attorney, returned to court for a sentencing hearing before Judge Davis. [<u>Id.</u> at 78-99]. The prosecutor again summarized the underlying facts, explained the substance of Denton's psychological evaluation that was conducted by the Highland Institute, and then recommended that Denton be imprisoned for 18 months. [<u>Id.</u> at 81-85]. The prosecutor and the court discussed the sentence for the sexual exploitation charges, including credit for time served and registration as a sex offender, and the prosecutor then stated, "No unsupervised contact with male or female children under 16 years of age; Fourth Amendment waiver." [<u>Id.</u> at 85-86]. The prosecutor then explained that the sentence for both criminal cases would run concurrent, with "credit for time served for each of those counts," and defense counsel then made several statements on Denton's behalf, including pointing out that Denton never produced or distributed child pornography and that he had health issues. [<u>Id.</u> at 86-95].

Thereafter, Judge Davis found that Denton's "pleas as to both cases [were] freely and voluntarily entered" and that there was "an underlying factual basis for the same." [<u>Id.</u> at 95]. Judge Davis then sentenced Denton on the sexual exploitation of children charges to 15 years, with 18 months to be served in custody and the balance to be served on probation, to run concurrent with the sentence on the

charges related to the unauthorized reproduction of commercial DVD movies, which was a "straight 18-month sentence." [Id. at 96-97]. Judge Davis then stated as follows:

> You'll be required to abide by the other general and special terms and conditions of probation previously outlined by the State and will be set forth upon your sentence.
> You'll be required to pay a probation supervision fee in the amount of $34 per month; sign a Fourth Amendment waiver; have no unsupervised contact with children under the age of 16 years; register as a sex offender; and complete sex offender evaluation and treatment through your current provider, Highland Institute.

[Id. at 96]. Judge Davis then asked the attorneys as well as Denton himself whether they had any questions with regard to the sentence and each of them indicated that they had no questions at which time Denton was remanded to state custody to immediately begin serving his 18-month sentence. [Id. at 96-98].

## C.     Judgment and Commitment Order

On October 31, 2008, Judge Davis issued a "Final Disposition Negotiated Plea Felony Sentence," see [id. at 47-49], which he amended on December 2, 2008,[8] [id. at 52-54]. The amended Final Disposition set forth the sentence and the general and special conditions of probation. [Id.]. Specifically, the amended Final Disposition

_____

[8] Judge Davis amended the Final Disposition because it listed the incorrect case number for one of the two criminal cases. See [Doc. 20 at 54]. The substantive provisions in both the Final Disposition and the amended Final Disposition, however, are identical. Compare [id. at 47-49], with [id. at 52-54].

memorialized the eight general conditions of probation set forth by the state at the April 18, 2008, plea hearing as well as five special conditions of probation, which included a Search and Seizure provision that provides in relevant part:

> The defendant must, at any time, without warning, probable cause, articulable suspicion or a search warrant, provide a sample of blood, urine, breath and/or saliva and submit to searches of his/her residence, workplace, vehicle, containers, records, and all other locations and items, by any law enforcement officer, probation officer or parole officer.

[Id. at 53-54].

## D.     November 22, 2010, Search and Seizure

On November 12, 2009, Denton was released from custody and met with his probation officer, Officer Gilbreath, in the Lawrenceville, Georgia, felony probation office.  [Id. at 12].  During this intake meeting, Officer Gilbreath provided Denton with routine intake paperwork, including a copy of the amended Final Disposition entered in his case.  [Id. at 12-13].  Officer Gilbreath specifically reviewed the Search and Seizure provision included in the amended Final Disposition and asked Denton whether he understood the provision in his sentence, and Denton acknowledged that he understood this provision by signing a Certificate of Service, which states, "This is to certify and acknowledge that a true and correct copy of this final disposition has been delivered in person and the defendant has been duly instructed

regarding the conditions as set forth."[9]  [Id. at 13-15, 103 (all caps omitted)].

Additionally, because Denton was classified as a dangerous sexual predator by the

review board, he had other conditions imposed, including having to wear a GPS

monitoring device that was monitored by Officer Gilbreath.  [Id. at 16].  Moreover,

Denton had to submit to polygraph examinations while on probation as part of his

sex offender treatment.  [Id.].[10]

On November 22, 2010, Denton appeared for a polygraph examination, which

was conducted by a certified polygraph examiner with the state of Georgia.  [Id. at

16, 30].  During this examination, Denton admitted that "he had viewed child

_____

[9] Officer Gilbreath also signed the Certificate of Service, which was dated
November 12, 2009, and included Denton's case number and offense of sexual
exploitation of children.  [Doc. 20 at 103].

[10] The parties have stipulated to the fact that during the intake meeting,
Denton was sober, alert, and understood what was said to him; that he appeared not
to be suffering from any conditions that limited his ability to understand, read, and
speak the English language; that he did not raise any objections to the Search and
Seizure clause contained in his sentencing paperwork when Officer Gilbreath
discussed it with him; that he did not ask to speak to his attorney about the Search
and Seizure clause or otherwise suggest that he believed the clause did not apply in
his case; and that he signed a Certificate of Service, attesting to the fact that Officer
Gilbreath had explained the conditions of his probation, including the Search and
Seizure clause, to him.  [Doc. 16 at 2 ¶ 3].  Additionally, the parties stipulated that
at no point after the November 12, 2009, intake meeting, did Denton alert Officer
Gilbreath that he believed the Search and Seizure clause set forth in his sentencing
paperwork was invalid, nor did Officer Gilbreath receive any information from the
court, the probation department, from defense counsel, or any other source
suggesting that the Search and Seizure clause was invalid at any time while he was
supervising Denton.  [Id. at 2 ¶ 4, 3 ¶ 5].

pornography on his computer, and also that the computer was at his residence that he had viewed it on." [Id. at 16-17].[11] After the polygraph examination, the examiner immediately contacted Officer Gilbreath's supervisor, Jason Cabrera ("Cabrera"), and advised him of the results of Denton's polygraph examination and Denton's admission. [Id. at 17]. Cabrera contacted Officer Gilbreath and they, along with another probation officer and two Gwinnett County police officers, met at Denton's residence, knocked on the door, and were greeted by one of Denton's roommates. [Id. at 17-18]. At this time, Officer Gilbreath explained to the roommate who he was and why they were there, and the roommate allowed them to enter the residence.[12] [Id. at 18]. The officers conducted a "brief search" of the residence and Officer Gilbreath located and seized the computer that was described by the polygraph examiner. [Id.]. Thereafter, Officer Gilbreath asked Denton's roommates whether there were any other computers used by Denton, and they identified two

---

[11] The parties stipulated to the fact that during the polygraph examination on November 22, 2010, Denton reportedly admitted, among other things, that he had unsupervised contact with a minor and that he had viewed and stored child pornography on his personal computer, which was identified as a Sony VAIO laptop. [Doc. 16 at 3 ¶ 6].

[12] Specifically, Officer Gilbreath testified that he informed the roommates that he was there "to get [Denton's] computers because of this situation and that [he] needed to take a look at them." [Doc. 20 at 21].

other computers, which the officers also seized. [Id. at 18-19].[13] There were two

other computers in the residence that were claimed by Denton's roommates, which

the officers did not seize, but they also searched Denton's bedroom and seized

certain computer media and other personal effects. [Id. at 21-22].

Following the search of Denton's residence and subsequent seizure of his

computers, the seized items were turned over to the local police department and a

search warrant was obtained to search Denton's computers, which revealed certain

items that led to the February 23, 2011, indictment in the Gwinnett Superior Court,

charging Denton with nine counts of sexual exploitation of children. [Id. at 19, 22-

23; Doc. 25-3]. During the evidentiary hearing before Judge Davis on Denton's

motion to suppress evidence obtained as a result of the November 22, 2010, search

and seizure, Officer Gilbreath testified that despite the language used by the court

at the October 30, 2008, sentencing hearing directing Denton to sign a Fourth

Amendment waiver, the only document he had with Denton's signature on it was

the Certificate of Service he signed during the November 12, 2009, intake meeting

in which Denton acknowledged that as a condition of probation, he had to submit

---

[13] Officer Gilbreath did not contact Denton prior to going to his residence, nor did he request permission to search the residence and seize the computers. [Doc. 20 at 19-20].

to searches. [Doc. 20 at 24-29].[14]  In fact, Officer Gilbreath testified that he believed

he had a valid Fourth Amendment waiver to search Denton's residence and that he

also wanted to act to preserve and collect the evidence on which he had received the

tip. [Id. at 31].  Judge Davis then asked, "So of all the Fourth Amendment waiver

cases we've had, they don't ever sign a specific waiver?" to which Officer Gilbreath

replied as follows:

> No.  We go solely on the document that is sent to us from the court,
> that had been told by the Judge and told by the D.A.'s office.  We tell
> him again.  There's no separate document other than that saying that
> he's been given the sentence and we've gone over it with him and he
> understands it.

[Id.].[15]

---

[14] Defense counsel asked Officer Gilbreath how Denton could submit to a search if he was never asked, to which Officer Gilbreath replied, "He was not present.  The reason I went ahead and took the computers is because I was scared Mr. Denton may [come] back, knowing that he failed the polygraph, and destroy the evidence or remove the evidence." [Doc. 20 at 29].  Officer Gilbreath further testified that he "called the [district attorney's] office, and I was told – am I allowed to take the computers based on the Fourth Amendment?  Yes, take the computers.  Do not – do not look at the computers."  [Id.].

[15] The parties have stipulated to the fact that the paperwork provided to Officer Gilbreath regarding Denton's state sentence was identical in all material respects to the paperwork he has received in every other case he has supervised in which a Fourth Amendment waiver has been executed and that insofar as there may be separate court documents generated when a Fourth Amendment waiver is made a part of a defendant's sentence, such documents are not transmitted to supervising probation officers like himself.  [Doc. 16 at 1 ¶¶ 1-2].

## II. DISCUSSION

### A. The Parties' Contentions

Denton seeks to suppress evidence obtained from the November 22, 2010, search of his residence, asserting that the "entry, search, and seizure were not effected pursuant to any recognized exception to the Fourth Amendment's warrant requirement." [Doc. 21 at 2]. Specifically, Denton argues that he "at no point relevant to this case intentionally relinquished or abandoned (i.e., waived) any measure of his Fourth Amendment protections" under Georgia law. [Id. at 21]. Additionally, Denton argues that neither the search of his residence nor the seizure of his property "satisfy the Fourth Amendment under the 'consent' rationale," asserting that "because doing so would require the finding of some vague and nebulous form of implied consent." [Id. at 22]. Finally, Denton argues that the search of his residence and the seizure of his property cannot "be justified on the notion that the probation officers effected this search and seizure on the 'good faith' belief that their behavior was justified by the 'search and seizure' language contained in his judgment and commitment order." [Id. at 24].[16]

---

[16] Denton does not challenge the validity of the subsequent search warrant obtained by the Gwinnett County police officers to search the computers or any other aspects of the search, but argues that because the search warrant application "informed the Gwinnett court that the search and seizure had been effected pursuant to a Fourth Amendment waiver when that clearly had not been the case," the fruits of the search should be suppressed. [Doc. 21 at 4].

The government argues that "waiver and consent do not tell the whole story" and that the "proper analysis . . . centers on [Denton's] expectation of privacy as a probationer balanced against the State of Georgia's interest in supervising and monitoring a probationer, as set forth by the Supreme Court in [United States v. Knights, 534 U.S. 112, 118 (2001)]." [Doc. 25 at 17]. Alternatively, the government argues that Denton "voluntarily consented to the search provision at the November 12, 2009 meeting with his probation officer, and in turn, voluntarily consented to the search on November 22, 2010," and that "applying Georgia law, [Denton] executed a valid 'waiver' of his Fourth Amendment rights at the October 30, 2008, sentencing hearing." [Id.]. Finally, the government argues that the good faith exception to the exclusionary rule applies under the circumstances present here. [Id.].

**B.** **Analysis**

"The Fourth Amendment of the United States Constitution guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" United States v. Adigun, Criminal Case No. 1:10–cr–00202–RWS–RGV, 2011 WL 2194253, at *15 (N.D. Ga. May 4, 2011), adopted by 2011 WL 2198308, at *1 (N.D. Ga. June 3, 2011) (alteration in original) (quoting U.S. Const. amend. IV). "Under the Supreme Court's general Fourth Amendment approach, courts examine the totality of the circumstances to determine whether a

search is reasonable within the meaning of the Fourth Amendment." <u>United States</u> <u>v. Wilcher</u>, Criminal Case No. 1:10-CR-25-TWT-LTW, 2010 WL 5678676, at *3 (N.D. Ga. Dec. 17, 2010), adopted by 2011 WL 336462, at *1 (N.D. Ga. Feb. 1, 2011) (<u>citing</u> <u>Samson v. California</u>, 547 U.S. 843, 848 (2006)). "Because '[t]he touchstone of the Fourth Amendment is reasonableness, . . . the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" <u>United States v. Boynton</u>, 337 F. App'x 801, 803 (11th Cir. 2009) (per curiam) (unpublished) (alterations in original) (citations omitted); <u>see also</u> <u>United States v. Wade</u>, Criminal Action No. 1:11–CR–0337–WBH–CCH, 2012 WL 279431, at *4 (N.D. Ga. Jan. 4, 2012), adopted by 2012 WL 292624, at *2 (N.D. Ga. Jan. 31, 2012).

"There is no question that the Fourth Amendment's protection against unreasonable searches and seizures applies to probationers." <u>Owens v. Kelley</u>, 681 F.2d 1362, 1367 (11th Cir. 1982) (citations omitted). However, "[t]he Supreme Court has recognized that a probationer[, like Denton,] may be subject to restrictions that diminish his reasonable expectations of privacy," <u>Boynton</u>, 337 F. App'x at 803 (citation omitted), and "[s]uch limitations are permitted because probationers have been convicted of crimes and have thereby given the state a compelling interest in

limiting their liberty in order to effectuate their rehabilitation and to protect society,"
<u>Owens</u>, 681 F.2d at 1367. After considering the parties' arguments and Supreme
Court and Eleventh Circuit precedent, the Court agrees with the government and
finds that "[a]pplying the balancing test articulated in *Knights*, . . . that reasonable
suspicion is the correct standard for analyzing the reasonableness of the search at
issue in this case." <u>United States v. Carter</u>, 566 F.3d 970, 974 (11th Cir. 2009) (per
curiam).

In <u>Knights</u>, the Supreme Court held that a search pursuant to a probation
condition and supported by reasonable suspicion was reasonable "under [the]
general Fourth Amendment approach of 'examining the totality of the
circumstances,' with the probation search condition being a salient circumstance."
534 U.S. at 118 (<u>quoting</u> <u>Ohio v. Robinette</u>, 519 U.S. 33, 39 (1996)). In reaching its
decision, the Supreme Court noted that the probationer had signed a probation
order agreeing to submit to a search of his person and property by any probation
officer or law enforcement officer "at anytime, with or without a search warrant,
warrant of arrest or reasonable cause." <u>Id.</u> at 114. Thus, the probationer's status
informed both sides of the Fourth Amendment reasonableness balance. <u>Id.</u> at 119.
That is, "[i]nherent in the very nature of probation is that probationers do not enjoy
the absolute liberty to which every citizen is entitled." <u>Id.</u> (citations and internal

marks omitted); see also Griffin v. Wisconsin, 483 U.S. 868, 874 (1987). The Supreme Court explained that the presence of the search clause, coupled with the probationer's awareness of that provision, diminished his reasonable expectations of privacy. Knights, 534 U.S. at 119-20. Additionally, the Supreme Court explained that the government also has a greater interest in preventing recidivism, and is "quite justified" in concluding that a probationer "will be more likely to engage in criminal conduct than an ordinary member of the community." Id. at 121. Balancing the competing considerations, the Supreme Court held that the Fourth Amendment "requires no more than reasonable suspicion to conduct a search of [a] probationer's house" if he is subject to a search condition. Id.[17]

Similar to the probationer in Knights, Denton executed a Certificate of Service in which he acknowledged that he had been advised of all of the conditions of his probation, including the Search and Seizure provision, authorizing any law enforcement, probation, or parole officer to search his residence, workplace, vehicle, containers, records, and all other locations and items "at any time, without warning,

_____

[17] The Supreme Court in Knights stated that it "need not decide whether [probationer's] acceptance of the search condition constituted consent in the Schneckloth [v. Bustamonte, 412 U.S. 281 (1973),] sense of a complete waiver of his Fourth Amendment rights." 534 U.S. at 118. Thus, the Supreme Court left open the question whether, in the absence of reasonable suspicion, a defendant's waiver of his Fourth Amendment rights as a condition of probation could justify a search either by sufficiently reducing his expectation of privacy or by constituting consent to the search. Id. at 120 n.6.

probable cause, articulable suspicion or a search warrant." [Doc. 20 at 53, 100-03].

Denton does not contend that he was unaware of this Search and Seizure provision, but rather asserts that he never actually gave an effective waiver of his Fourth Amendment rights. See [Docs. 21 & 30]. However, the issue is not whether Denton waived his Fourth Amendment rights, but whether the Search and Seizure provision that was a condition of his probation and of which Denton was aware, diminished his expectation of privacy sufficiently to render a search based only on reasonable suspicion lawful under the Fourth Amendment,[18] and the Court finds that, despite Denton's arguments to the contrary, see [Doc. 30 at 1-3], it did. Moreover, the government has a strong interest in monitoring Denton closely as a probationer in order to prevent him from engaging in criminal activity, and the balance of these considerations require no more than reasonable suspicion to search Denton's residence. See Knights, 534 U.S. at 121; United States v. Yuknavich, 419 F.3d 1302,

---

[18] Indeed, "[t]he key issue [is] not whether a probationer's acceptance of such a probation condition amounted to consenting voluntarily to waive all Fourth Amendment rights, but rather whether such a search, supported by reasonable suspicion, was reasonable under a 'totality of the circumstances' analysis." United States v. Scott, No. CR 106-012, 2006 WL 1517108, at *8 (S.D. Ga. May 26, 2006), adopted at *2 (footnote omitted) (citing Knights, 534 U.S. at 118). Moreover, even if the Court reached Denton's waiver argument, the Court finds that the facts present here are distinguishable from Fox v. State, 527 S.E.2d 847, 849 (Ga. 2000), and are more akin to those set forth in Hess v. State, 674 S.E.2d 362 (Ga. Ct. App. 2009); Brooks v. State, 664 S.E.2d 827 (Ga. Ct. App. 2008); and Johnson v. State, 546 S.E.2d 562 (Ga. Ct. App. 2001), all of which found a valid waiver of the defendants' Fourth Amendment rights.

1309-10 (11th Cir. 2005) (third alteration in original) (citation and internal marks omitted) ("It goes without saying that possession of child pornography is not a victimless crime. A child somewhere was used to produce the images downloaded . . ., in large part, because individuals like [the defendant] exist to download the images. Sex offenders are a serious threat in this Nation . . . . States thus have a vital interest in rehabilitating convicted sex offenders.").

Denton asserts that he did not agree to a warrantless search of his residence by signing the Certificate of Service,[19] but the Eleventh Circuit has "followed *Knights* in [*Yuknavich*] and concluded that reasonable suspicion was all that was required to search a probationer's computer, even where the suspect's probation agreement did not require him to submit to warrantless searches." United States v. Gomes, 279 F.

---

[19] Denton attempts to distinguish Knights by asserting that the probationer in Knights "had specifically and expressly agreed to the search and seizure clause on which his probation was conditioned– where [] Denton was never given such an opportunity." [Doc. 30 at 1-2]. The facts set forth in Knights merely state that the defendant was sentenced by a California court to probation for a drug offense and that the probation order included a search provision, which Knights then signed, acknowledging he had received a copy, understood the terms, and agreed to abide by the conditions of probation. 534 U.S. at 114. The Supreme Court's rationale rested not on the defendant's agreement to the condition but on the fact that the "probation order clearly expressed the search condition and Knights was unambiguously informed of it." Id. at 119. Likewise, Denton's probation order clearly expressed a Search and Seizure provision and he was unambiguously informed of it. See [Doc. 20 at 53, 103]. Whether Denton agreed to the search condition is not material to the analysis, as demonstrated by the Eleventh Circuit decisions discussed herein.

App'x 861, 870 (11th Cir. 2008) (per curiam) (unpublished) (<u>citing</u> <u>Yuknavich</u>, 419

F.3d at 1309-11). In <u>Yuknavich</u>, the defendant was on probation for charges relating

to child pornography, and according to the terms of his probation, he was not to

access the Internet unless it was for work purposes during work hours. 419 F.3d at

1304. He was also to refrain from, among other things, purchasing or possessing

any pornographic material; however, unlike the probationer in <u>Knights</u>, the terms

of his probation did not require him to submit to searches of his home or person by

any law enforcement or probation officers. <u>Id.</u> at 1305. During a home visit by his

probation officers, Yuknavich took ten minutes to answer the door, was shirtless,

and was acting nervously, and when the probation officers entered his home, they

observed several computers and other computer equipment, including a computer

with an external modem connected to a phone line, in a spare bedroom which

prompted the probation officers to ask Yuknavich to sit at the computer and click

"Start" and then "Documents." <u>Id.</u> at 1306-07. When Yuknavich moved the mouse,

it became apparent that the computer was in the process of downloading files from

the Internet, several of which contained JPEG files. <u>Id.</u> at 1307. One of the probation

officers asked Yuknavich to open a JPEG file and it contained a picture of a nude

boy, which prompted Yuknavich to admit that he had been downloading child

pornography and to ask for a second chance. <u>Id.</u> A subsequent search of

Yuknavich's computers pursuant to a search warrant yielded approximately 535 images of child pornography.  Id.

In finding the initial search of Yuknavich's computer at the residence lawful,[20] the Eleventh Circuit applied the Knights balancing test and specifically considered whether the lack of a condition in Yuknavich's probation agreement requiring him to submit to warrantless searches "upset[] the *Knights* balancing test so as to require more than reasonable suspicion to justify a search of Yuknavich's computer."  Id. at 1308-10 (citation omitted).  The Eleventh Circuit found that the omission of the search provision as a condition of probation "did not sway the *Knights* balancing test such that the probation officers needed more than reasonable suspicion to conduct a search of Yuknavich's computer," and it concluded that reasonable suspicion existed in light of the nature of his conviction, that he had previously admitted to accessing the Internet unsupervised on two prior occasions, the restriction on his Internet usage, that it took him ten minutes to answer the door and when he did, he was shirtless and acting nervous, and that the officers observed a phone line running into a modem connected to his computer.  Id. at 1311.

---

[20] In his motion to suppress, Yuknavich "argued that while the officers had a right to visit him at his house as part of his probation, they could not conduct a search without a warrant, probable cause and an exception to the warrant requirement, or his consent– none of which they had."  Yuknavich, 419 F.3d at 1307.

In <u>Carter</u>, the Eleventh Circuit followed the reasoning in <u>Yuknavich</u> and again found that a warrantless search of a probationer's home based on reasonable suspicion was constitutionally permissible even in the absence of a statutory or regulatory provision or a condition of probation permitting such a search. <u>Carter</u>, 566 F.3d at 973-75. The defendant in <u>Carter</u> argued for the suppression of evidence based on the warrantless search of his townhouse while he was on probation, asserting that "a probationer is not subject to searches based on reasonable suspicion alone merely as a consequence of being a probationer," but that "there must be some condition of probation that reduces a probationer's expectation of privacy in the object of the search in order for a search to be permissible based on reasonable suspicion alone." <u>Id.</u> at 973.

The Eleventh Circuit agreed with the defendant that "none of [the] binding precedent holds that a probationer is subject to reasonable suspicion searches solely because he is a probationer," but it applied the <u>Knights</u> balancing test and concluded that "reasonable suspicion was the correct standard for analyzing the reasonableness of the search at issue in this case," despite the fact that the Eleventh Circuit found defendant's expectation of privacy higher than that of the defendants in <u>Yuknavich</u> and <u>Knights</u> since "he did not have a condition of probation that required him to submit to warrantless searches of his home or regulate his use of a computer that

was searched." Id. at 973-75. Nevertheless, the Eleventh Circuit found that defendant's expectation of privacy was still "reduced by the condition of probation requiring him to submit to home visits by his probation officer." Id. at 975. In particular, the Eleventh Circuit stated: "When a probationer has a condition of probation reducing his expectation of privacy, and the government has a higher interest in monitoring the probationer due to the nature of his criminal history, a search can be permissible when supported only by reasonable suspicion." Id. Thus, the mere fact that the defendant had a condition of probation that required him "to submit to visits by [his] probation officer at his home, workplace, or elsewhere," even though he was not required to actually submit to warrantless searches, reduced his expectation of privacy in his home. Id. at 974-75 (citation omitted).[21] Balanced against the government's high interest in monitoring him, the search of his townhouse based on reasonable suspicion was found reasonable under the Fourth Amendment. Id. at 975.[22]

_____

[21] Here, Denton likewise had a general condition of probation that required him to permit his probation officer to visit him at his home or elsewhere, see [Doc. 20 at 53], which, under Carter, reduced his expectation of privacy in his home, 566 F.3d at 975, without even considering the fact that Denton's terms of probation also included the Search and Seizure provision, see [Doc. 20 at 53].

[22] Similarly, the Eleventh Circuit, following Yuknavich, held that the reasonable suspicion standard applied to a warrantless search of a probationer's residence where even though the terms of probation did not expressly allow warrantless searches, it did provide that the probationer would be subject to

In light of the conditions of probation included in Denton's probation order and the fact that he signed the Certificate of Service acknowledging he had been advised of those conditions balanced against the government's interest in monitoring him due to the nature of his criminal history, the Court finds that binding precedent establishes that the search of Denton's residence was lawful if supported by reasonable suspicion. Therefore, the Court now turns to whether Officer Gilbreath reasonably suspected that evidence of a crime would be found on computers in Denton's residence at the time of his search on November 22, 2010. See Wade, 2012 WL 279431, at *6.

"Reasonable suspicion consists of a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." United States v. Godsey, 224 F. App'x 896, 899 (11th Cir. 2007) (per curiam) (unpublished) (citation and internal marks omitted). "When making a determination of reasonable suspicion, courts must examine the totality of the circumstances of each case to see whether the searching officers have a particularized and objective basis for suspecting legal wrongdoing." Wilcher, 2010 WL 5678676, at *4 (citation omitted); see also United States v. Foskey, 455 F. App'x 884, 887 (11th Cir. 2012) (per curiam) (unpublished) (citation omitted). "[A]n

_____

searches "at any time, day or night." United States v. Walley, 271 F. App'x 966, 968 (11th Cir. 2008) (per curiam) (unpublished).

inchoate and unparticularized suspicion or hunch of criminal activity is not enough to satisfy the minimum level of objectivity required." <u>Wilcher</u>, 2010 WL 5678676, at *4 (alteration in original) (citation and internal marks omitted); <u>see also</u> <u>United States v. Brumfield</u>, Criminal Action No. 1:10–CR–053–CAP–ECS–1, 2011 WL 5978082, at *3 (N.D. Ga. Feb. 18, 2011), adopted by 2011 WL 5976300, at *1 (N.D. Ga. Nov. 29, 2011) (citation omitted). "The officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." <u>Wilcher</u>, 2010 WL 5678676, at *4 (citation and internal marks omitted); <u>see also</u> <u>United States v. Lewis</u>, 674 F.3d 1298, 1311 (11th Cir. 2012). "To determine whether officers had reasonable suspicion, [the court] must take stock of everything they knew before searching." <u>Gomes</u>, 279 F. App'x at 870 (citation and internal marks omitted); <u>see also</u> <u>United States v. Henderson</u>, 145 F. App'x 346, 351-52 (11th Cir. 2005) (per curiam) (unpublished).

Denton does not contend that Officer Gilbreath lacked reasonable suspicion to search his residence, nor could he credibly make that argument based on the evidence before the Court. Prior to searching Denton's residence on November 22, 2010, Officer Gilbreath knew that Denton was a registered sex offender; that he had been convicted of five counts of sexual exploitation of children in the Superior Court of Gwinnett County, for which he had served 18 months in custody and was serving

the remainder on probation; and that Denton had admitted during his November 22, 2010, polygraph examination, that he had unsupervised contact with a minor and that he had viewed and stored child pornography on his home computer. [Doc. 20 at 12, 16-18; Doc. 16 at 3 ¶ 6]. Because the officers arrived at Denton's residence with information suggesting that he possessed child pornography based on his admission to the polygraph examiner that day, the officers "had particular, objective evidence to support a reasonable suspicion that he was engaged in criminal activity." Gomes, 279 F. App'x at 863, 870 (citation omitted) (finding officers had reasonable suspicion to search defendant's home where officers had information that defendant, who was on probation for a conviction involving an assault on a minor, might be involved with child pornography and he subsequently admitted that he had images of child pornography on his home computer). Accordingly, Denton's motion to suppress, [Doc. 11], is due to be denied since Denton was subject "to a term of probation that significantly diminished [his] reasonable expectation of privacy[,]" and the information acquired by Officer Gilbreath gave him reason to suspect that Denton was engaging in criminal activity sufficient to search his residence and seize his computers. Boynton, 337 F. App'x at 803 (alterations in original) (citation and internal marks omitted); Carter, 566 F.3d at 973-75; Yuknavich, 419 F.3d at 1309-11.[23]

_____

[23] The Court also finds that the search was reasonable in its scope and manner under the Fourth Amendment. Indeed, even though Denton was not present at the

### III. CONCLUSION

For the foregoing reasons and cited authority, it is hereby **RECOMMENDED** that Denton's motion to suppress evidence, [Doc. 11], be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 19th day of June, 2012.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

time of the search, Officer Gilbreath and other law enforcement officers were lawfully present inside the residence with the consent of Denton's roommate. See [Doc. 20 at 17-18]; see also United States v. Acosta, 807 F. Supp. 2d 1154, 1178 (N.D. Ga. 2011), adopted at 1168 (citations and internal marks omitted) ("[A] warrantless entry is valid when based upon the consent of a third party whom the police, at the time of entry, reasonably believed possessed common authority over the premises . . . ."). Thereafter, the officers restricted their search of the residence to locating Denton's laptop computer that was described to Officer Gilbreath by the polygraph examiner and any other computers or other items solely belonging to Denton. [Doc. 20 at 18-22]. Because the Court finds that under Knights and its progeny the warrantless search of Denton's residence did not violate the Fourth Amendment, the Court need not address the government's alternative arguments regarding consent, waiver, and good faith. See [Doc. 25 at 35-55].